UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **IDEA PUBLIC CHARTER SCHOOL**, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil No. 05-467 (RMC)[1] |
| **CRYSTAL BELTON,** as next friend of the minor child, **C.M.,** | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

These two cases concern the education of C.M., a minor child who once received special education services at Integrated Design and Electronics Academy Public Charter School ("IDEA PCS") in the District of Columbia. Ms. Miller is C.M.'s mother.[2] In Civil Case No. 05-467, IDEA PCS appealed a Hearing Officer's Decision ("HOD") issued under the Individuals with Disabilities Education Improvement Act (IDEIA), 20 U.S.C. § 1400, *et. seq.*; that 2005 HOD ordered IDEA PCS to conduct an occupational therapy evaluation on C.M. and to consider a neurological evaluation. *See* Pl.'s Mot. for Summ. J. [Dkt. #23] at 4. In Civil Case No. 06-1459, Ms. Miller sued to recover her attorneys' fees for the same hearing. The tests have been performed. The question

---

[1] The parties to this action were also parties in *Sprow v. IDEA PCS*, Civil Case No. 06-1459 (HHK) until the Court consolidated all claims concerning the education of C.M. in this Court, leaving the balance of the *Sprow* claims before Judge Henry Kennedy. *See* April 4, 2007, Minute Entry Order.

[2] When the older case was filed, C.M.'s mother was identified as Ms. Belton. In the later case for attorney's fees, she was identified as Ms. Miller. The Court assumes Ms. Miller prefers the second name and will use it in the text of this opinion, despite the caption on the older case.

remaining is whether Ms. Miller was a "prevailing party" entitled to recover attorneys' fees. On the particular facts of this case, the Court will deny the application for attorneys' fees and grant summary judgment in favor of the Plaintiff because *res judicata* barred the result of the 2005 HOD.

## I.  FACTUAL BACKGROUND

This dispute is old enough to have whiskers. C.M. initially attended District of Columbia Public Schools ("DCPS"), where he received special education services until his mother withdrew him from special education in 1997. *See* Administrative Record ("AR") [Dkt. #21] at 23. Ms. Miller filed a request for an administrative due process hearing on February 18, 2004, alleging that IDEA PCS, where C.M. was then in school, and/or DCPS had failed to conduct a neurological evaluation on the student based on the recommendation of a 1997 psychological evaluation. AR at 50. Ms. Miller filed an Amended Hearing Request on April 5, 2004, adding allegations that DCPS had failed to provide C.M. with appropriate services and failed to reevaluate him before terminating special education services. *Id.* The requested hearing convened on April 26, 2004.

Hearing Officer Terry Banks issued an HOD ("2004 HOD") on May 11, 2004. *See generally* AR at 48-53. The decision noted that both DCPS and IDEA PCS presented witnesses and that Ms. Miller testified on behalf of C.M., who was at that time a 12-year-old student. AR at 51. The 2004 HOD found that C.M. had been removed from special education services in 1998 at his mother's request but that, on December 8, 2003, his counsel requested that he be evaluated to determine his eligibility for special education services. *Id.* Ms. Marcia Gustafson completed a psychoeducational evaluation of C.M. on February 5, 2004. *Id.*

> Ms. Gustafson found that (1) [C.M.] suffers from a reading disorder and a Disorder of Written Language, (2) [C.M.] would benefit from "supplemental tutoring from a reading specialist to provide him with a

>       grounding in phonetic awareness and word attack skills, as well as to assist
>       him in expanding his sight vocabulary," and (3) the test results "should be
>       shared with [C.M.'s] pediatrician with a view to determining whether he
>       requires a neurological assessment . . . ."

AR at 51. In his conclusions of law, Hearing Officer Banks held that "[n]othing in [C.M.'s] current evaluations, including Ms. Gustafson's nuanced suggestion, compels the performance of a neurological evaluation." AR at 52. He "DISMISSED WITH PREJUDICE" Ms. Miller's request for a neurological evaluation. *Id.* (upper case in original). He also ruled that all allegations relating to DCPS's failure to comply with the recommendation in the 1997 evaluation were barred by the statute of limitations. *Id.*; *see* D.C. Code § 12-301 (2001). He further ordered that DCPS convene a Multidisciplinary Team ("MDT") meeting on May 10, 2004, to determine C.M.'s eligibility for special education services. AR at 52.

An MDT meeting was convened on August 17, 2004 to consider an educational plan for C.M. for the 2004-2005 school year. AR at 4. C.M. was found eligible for special education and related services with a disability classification of learning disabled ("LD"). *Id.* At the end of that meeting, Ms. Miller requested that a neurological evaluation be done and that an occupational therapy ("OT") evaluation be done, based on Ms. Gustafson's psychoeducational evaluation. AR at 5. Ms. Miller also requested compensatory education from DCPS from November 1997. *Id.* IDEA PCS responded that there was nothing new in C.M.'s file since the 2004 HOD that would support a neurological evaluation and that Ms. Miller should appeal the 2004 HOD if she disagreed with it. *Id.* In addition, IDEA PCS told Ms. Miller that nothing in the psychoeducational evaluation supported or recommended an OT evaluation. *Id.*

Ms. Miller filed a request for a due process hearing on November 26, 2004,

challenging the failure of IDEA PCS to conduct the neurological and OT evaluations on C.M. that she had requested at the August MDT meeting. AR at 13. IDEA PCS filed a motion on January 12, 2005, seeking to dismiss the request on *res judicata* grounds in light of the unappealed decision in the 2004 HOD. AR at 14. On or about January 27, 2005, Chief Hearing Officer Smith granted the motion and dismissed Ms. Miller's request for a hearing; this decision was not served on IDEA PCS, although Ms. Miller's counsel received it and requested reconsideration because the matter had already proceeded to a hearing on January 18, 2005. AR at 1, 3, 15-16. It appears that the Chief Hearing Officer reconsidered his ruling and vacated it. Although this second ruling is not part of the Administrative Record, it was supplied by Ms. Miller. *See* Def.'s Opp. to Pl.'s Mot. for Summ. J. and Def.'s Mot. Cross-Motion for Summ. J. ("Def.'s Opp.") [Dkt. #25] at 5 & Exh. 3 (Hearing Officer Smith declaring the January 27, 2005, decision "NULL AND VOID"). On February 2, 2005, Hearing Officer Coles B. Ruff issued the 2005 HOD in which he directed IDEA PCS to conduct an OT evaluation on C.M. and to "convene a student evaluation team (SEP) meeting to determine whether a neurological or neuropsychological evaluation is more appropriate for the student and determine any other evaluations that are warranted, if any." AR at 7.

All the tests have been performed but the results are not part of the record. C.M. no longer attends IDEA PCS.

## II. LEGAL STANDARDS

### A. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party that "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson*, 477 U.S. at 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### B. Standard of Review of Administrative Decisions Under IDEIA

In reviewing administrative decisions under the IDEIA, the courts will review the administrative record, hear additional evidence upon the request of the parties, and thereafter make

a decision based on the preponderance of the evidence. *See* 20 U.S.C. § 1415(i)(2)(B). The court has broad discretion to grant appropriate relief under IDEIA, *see Sch. Comm. of Burlington v. Mass. Dept. of Educ.*, 471 U.S. 359, 369 (1985), and the standard of review under IDEIA is less deferential than the traditional "substantial evidence" test used in federal administrative review cases. *See e.g. Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988); *Kroot v. D.C.*, 800 F. Supp. 976, 981 (D.D.C. 1992). However, the court should not "substitute its own notions of sound educational policy for those of the school authorities." *Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). The court must give "due weight" to the administrative proceedings, but its decision ultimately should be an "independent [one] based on a preponderance of the evidence." *Id*. at 206-07.

### III. ANALYSIS

IDEA PCS argued to Hearing Officer Ruff that he should dismiss the hearing request because Hearing Officer Banks had already ruled on the request for a neurological evaluation, there was no record basis for an OT evaluation, and, in August 2004, Ms. Miller had no new information beyond what had been presented to Hearing Officer Banks in May 2004. AR at 5. It also argued that "[a] parent is not entitled to any and all evaluations simply upon request; there must be a legitimate basis for the requested evaluation." AR at 5. Ms. Miller argued that "42 [sic] CFR 536 requires evaluations be conducted upon parental request;" "[t]he issues in the prior [2004] HOD were dealing with what DCPS had and had not done;" and "[n]owhere in the previous [2004] HOD does the Hearing Officer say that the student does not need a neurological and the HOD made no finding regarding an OT evaluation." AR at 6. Faced with these arguments, Hearing Officer Ruff concluded:

> Although a MDT is not required to conduct any and every evaluation that a parent requests, evaluations for which there is a legitimate basis and which are reasonably related to a suspected disability classification should be conducted, especially when requested. There was discussion of the issues related to the student's memory and other issues at the MDT. These issues being raised and discussed coupled with the recommendation in the psychological evaluation, [sic] was [sic] a reasonable basis for the requested evaluations as they were related to the already identified disability classification of L[earning] D[isabled].

AR at 7. Hearing Officer Ruff noted that he had rejected IDEA PCS's motion to dismiss on the grounds of *res judicata* but did not articulate his reasons therefor. AR at 4 & 5 n.2.

The parties renew their respective arguments before this Court. IDEA PCS argues that a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Pl.'s Mot. to Dismiss [Dkt. #23] at 7 (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). It correctly notes that claim preclusion requires a showing of three elements: (1) the presence of the same parties or privies in the previous and current suits; (2) claims arising from the same cause of action in both suits; and (3) a final judgment on the merits in the previous suit. *See Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004). Claims "arise from the same cause of action" when they are based on the same "nucleus of facts." *Id.* Before Hearing Officer Ruff, Ms. Miller argued "that *res judicata* did not apply as the issues presented in the April 2004 amended complaint were filed against DCPS rather than IDEA PCS." *See* Def.'s Opp. at 4. She now asserts that the 2004 hearing considered only her claim that an MTD meeting in December 1997, when C.M. was still attending DCPS, clearly indicated that C.M. should receive a neurological evaluation.

This argument re-writes history. The 2004 HOD by Hearing Officer Banks addressed Ms. Miller's claims against DCPS arising from the 1997 MTD, which he found time-barred, *and* her

claims against IDEA PCS based on the psychological evaluation performed by Ms. Gustafson in February 2004. *See* AR at 37-38. In relationship to the latter, Hearing Officer Banks rejected claims by Ms. Miller that Ms. Gustafson's evaluation required IDEA PCS to perform a neurological evaluation. It is pure pretense to present the 2004 HOD as only resolving claims against DCPS. Since, according to Ms. Miller, this was the argument she successfully presented to Hearing Officer Ruff, one can perceive why he rejected IDEA PCS's reliance on *res judicata*.

There are actually two 2005 HODs here: the one by Chief Hearing Officer Smith and the one by Hearing Officer Ruff. The record does not reveal the process within the Student Hearing Office whereby the Chief Hearing Officer had authority to decide the legal question of the applicability of the *res judicata* doctrine while a different Hearing Officer could proceed to an evidentiary hearing without awaiting the legal decision. In any event, only one of them could be right. It is clear that Ms. Miller asked for an evaluation in December 2003, which was performed by Ms. Gustafson in February 2004. That evaluation did not require a neurological evaluation or recommend an OT evaluation. Ms. Miller requested both evaluations at the end of the MTD meeting in August 2004 but had no new information on which to base her requests. IDEA PCS indicated that new information was required and declined to conduct tests over which it had a favorable, and unappealed, 2004 HOD from Hearing Officer Banks. Ms. Miller argues, without citation, that "the law is clear, that even when a MDT team reviews existing data and determines that no evaluations are warranted, if the parent still persists in her request, the local educational agency must provide the testing. . . . The belief that new information was required is not plausible." Def.'s Opp. at 13.

In this respect, the Court agrees fully with Hearing Officer Ruff. "[An] MDT is not required to conduct any and every evaluation that a parent requests." AR at 7. There must be a

basis for the request and, on these facts, where Ms. Miller received an unfavorable 2004 HOD and failed to appeal it, and where she came to the MTD meeting in August (only 2-3 months later) with no new information concerning C.M. – not surprising in light of the intervening summer months out of school – IDEA PCS was within its rights to decline to conduct more tests.[3]  The Court also agrees fully with Chief Hearing Officer Smith, who found that *res judicata* barred the 2005 due process hearing but inexplicably failed to send his decision to the school.

### IV.  CONCLUSION

This Court finds that IDEA PCS did not deny C.M. a free appropriate public education, and summary judgment will be granted in favor of the Plaintiff IDEA PCS.  Because the Court finds that Ms. Miller was not a prevailing party, her request for attorneys' fees must be denied. Therefore, the Court will grant Plaintiff PCS IDEA's Motion to Dismiss the Defendant's Complaint for Attorney's Fees. *See* [Dkt # 32].

A memorializing Order accompanies this memorandum opinion.

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: July 19, 2007

---

[3] The Court also notes that while IDEA PCS was within its rights to decline to conduct more tests, in an effort to resolve any outstanding issues with Ms.Miller, IDEA PCS did complete an occupational therapy evaluation and a neuropsychological evaluation. *See* Pl.'s Mot. to Dismiss [Dkt. #23] at 13.